ODOM, Justice.
 

 Plaintiff sued defendant for damages resulting from personal injuries which he alleged were caused by the fault of the defendant. Pie alleged that while he and other laborers were crossing Bayou St. John on a drawbridge owned and operated by defendant, the bridge tender, without warning and without apparent necessity, began to raise the draw which spans the bayou; that the raising of the draw put him in great danger of death or bodily injuries, and that it became necessary for him to jump from the draw to the bank of the bayou, and in doing so sustained a longitudinal fracture of the lower end of the right tibia. He alleged that the agents and employees of the defendant company were grossly negligent in the operation of this drawbridge in that they began to raise the draw when they knew or should have known that he and others were on the bridge, and that his injuries resulted directly from such negligence. . .
 

 The defendant denied liability, alleging that its agents and employees were guilty of no fault, and alternatively alleged that plaintiff was a trespasser or a mere licensee on its bridge and that it owed to him no duty except not to injure him wantonly; and further, in the alternative, if the court should find that plaintiff was not a trespasser or licensee, the defendant pleaded contributory negligence and assumption of risk on the part of the plaintiff.
 

 The case was tried before a jury which found for plaintiff and assessed his damages at $1,750, for which amount judgment was rendered by the court. The defendant made application for a new trial on the ground that the judgment was contrary to the law and the evidence, and, further, that in any event the amount of the award was excessive. The trial judge was of the opinion that a judgment for the plaintiff was proper, but that he was not entitled to more than $1,250, and suggested to counsel that he would grant a new trial unless plaintiff agreed to have the amount of the award reduced to that sum. Counsel for plaintiff' entered a remittitur of $500, and judgment was rendered by the court in favor of plaintiff for $1,250.
 

 The defendant carried the case to the Court of Appeal, where the verdict and judgment were set aside and the case remanded for a new trial. Both litigants applied to this court for writs and both applications were granted.
 

 The opinion of the Court of Appeal is reported in 166 So. 640. The issues involved both as to the law and the facts are discussed at length in the opinion. The reason assigned by the court for remanding the case was that the trial judge erred in refusing to permit the defendant to introduce in evidence before the jury a record book kept by the bridge tenders showing the number of times each 24 hours covering a period of several months prior to the day
 
 *927
 
 of the accident that the draw of the bridge was raised to permit vessels to pass through the bayou. Under the pleadings and under the testimony of the plaintiff, the question as to whether the drawbridge was frequently opened in order to permit vessels to pass through the bayou became material. Plaintiff testified that for- some time prior to the date on which he was injured he had been at work for the Emergency Relief Administration on the Mississippi side of Bayou St. John within a short distance of the bridge and that he and many other laborers had crossed the bridge at least twice every day and had never seen the draw of the bridge raised, and for that reason had no reason to suppose that it would be raised at the time he attempted to cross on the day of his injury. Defendant’s contention was that the bridge was opened at frequent intervals both day and night during the entire time that plaintiff was employed as a laborer in that vicinity, and that plaintiff knew or should have known that it might be raised at any moment; and, further, that the bridge was never opened except upon the signal o,f an approaching vessel, which could be heard by those in that vicinity.
 

 The testimony showed that two men were employed to operate the draw of the bridge, and that they were required by the defendant railroad company to make a record showing the name of each vessel which passed through the bayou, the date of its passage, the time the draw was raised and the time it was lowered. This record was made by the bridge tenders in a ledger book, the record being a conglomeration of figures and words which were readily understandable by the bridge tenders and by those familiar with the method used by them, but which could not be understood by others without an explanation by those who made the entries in the book as to what the words and figures stood for. The two bridge tenders who made this record were present in court and both testified. They were permitted by the trial judge, over the objection of counsel for the plaintiff, to use this record book to refresh their memories as 'to the time the bridge was opened on the day of the accident, but they were not questioned as to the frequency with which the bridge was opened on other days. As this book contained data entered by the bridge tenders showing the frequency with which vessels passed through the bayou on other days extending back over a period of some two or three years, counsel for defendant offered the book itself in evidence. To this offering counsel for plaintiff objected. The objection was sustained by the trial judge, and counsel for defendant reserved a bill of exceptions and asked leave of the court to attach the book to the bill in order that the same might be carried up to the Court of Appeal.
 

 We think the ruling of the trial court was correct for two reasons. The first is that there was no necessity for introducing the book in evidence because the bridge tenders who made the record were both called as witnesses and while on the stand were permitted to give testimony touching the question as to the passage of vessels through the bayou and the necessity for raising the draw for that purpose, and were permitted to use the book in order to refresh their memories. In that' way the defendant had
 
 *929
 
 an opportunity to get before the jury, in a manner which could easily be understood by the jurors, all the data shown by the book. The ruling of the trial judge was clear to the effect that these witnesses who made the record could use the book in order to refresh their memories touching the precise point which counsel for defendant insisted they had a right to prove. This method of getting the testimony before the jury would not have been confusing, whereas the book itself might have been. The book is in the record, and from our observation of it, we think the members of the jury, with no more explanation than was given them, would in all probability have been confused.
 

 Counsel for defendant, we think, have no right to complain of the ruling made by the district judge. His ruling was liberal in their favor. Their failure to get into the record the data was due to their own fault.
 

 In the second place, there v^as no necessity for a remand of the case for new trial, even if it be conceded that the trial judge erred in refusing to permit the book to be introduced in evidence, because the book itself was brought up to the Court of Appeal attached to the bill of exception and was before the court for its inspection. The Court of Appeal’s only purpose in remanding the case was to have the book introduced in evidence on a subsequent trial. As the book was in evidence, having been brought up attached to a bill of exception, the court could have considered what it disclosed along with the other testimony.
 

 Under the circumstances disclosed, we think the book itself was not admissible in evidence.
 

 In their applications for writs, both parties complained of rulings made by the trial judge and by the Court of Appeal in its opinion. Inasmuch as the Court of Appeal did not pass upon the merits of the case, but remanded the same, the errors complained of are not properly before us for decision.
 

 We are of the opinion that the Court of Appeal should have decided the case on the record brought before it and that it should not have been remanded.
 

 For the reasons assigned, the judgment of the Court of Appeal remanding the case to the lower court' for a new trial is set aside, and it is further ordered that the clerk of this court return the record to the Court of Appeal, and that the case be decided by it on the record made up and filed therein.