427 So.2d 65 (1983)
Percy J. HINGLE, et al.
v.
AUDUBON INSURANCE COMPANY.
No. CA-0204.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1983.
*66 Jacqueline Mae Goldberg, New Orleans, for plaintiffs-appellants.
David M. Cambre, Dillon & Cambre, New Orleans, for defendant-appellee.
Before BARRY, KLEES and CIACCIO, JJ.
BARRY, Judge.
On the morning of February 12, 1979, plaintiffs' 88-year old mother, Angela Hingle, was found lying in the backyard of her granddaughter's home, her feet and legs on the cement walkway and her body over the grass. There were no witnesses to the accident, but it was apparent the elderly woman had sustained a fall which resulted in a broken hip and her death two months later. Her daughter and son, individually, and the son as administrator of her succession, filed this wrongful death and survival action against Audubon Insurance Co., which provides homeowner's coverage to the decedent's granddaughter and her husband. Defendant stipulated Mrs. Hingle's death resulted from injuries suffered in the fall and plaintiffs agreed to limit their demand to the $25,000 policy limits. The only issue was the liability of defendant's insureds, Mr. and Mrs. Cornu, who owned the property on which decedent fell.
Plaintiffs alleged two bases for the liability of the homeowner-insureds: strict liability under LSA-C.C. Art. 2317 and negligence under LSA-C.C. Art. 2315. The Trial Judge ruled in favor of the defendant, finding plaintiffs failed to prove the cause of decedent's fall. On appeal plaintiffs contend the lower court's finding was manifestly erroneous. Plaintiffs also assign as error the trial court's refusal to admit into evidence certain photographs of the backyard where decedent fell which were taken the morning of the trial by Mr. Cornu, defendant's insured.
Plaintiffs' strict liability claim is based on the allegation that there was an indentation of some sort in the surface of the yard next to the walkway where Mrs. Hingle fell which constituted a vice or defect and caused Mrs. Hingle's fall.[1] Plaintiffs' alternative theory is that defendant's insureds were negligent in failing either to repair or fill in the low area in the yard, or to warn Mrs. Hingle of the potential danger. Both of plaintiffs' theories of recovery require an initial finding that there was an indentation in the Cornus' yard, that the depression constituted a defective or dangerous condition, and that the defective condition was a cause-in-fact of decedent's fall. Pretermitting any decision as to the first two elements, the trial court found the third prerequisite to recovery, causation, had not been established. In his Reasons the Trial Judge declared:

*67 The plaintiffs have failed to prove the cause of the accident.
The accident could have been caused by Mrs. Hingle fainting, turning her ankle or other causes. There is insufficient evidence to conclude that "the defect (assuming that the defect was sufficient) played any part in the accident".
There were no eyewitnesses to the accident. Mrs. Hingle died without disclosing the cause or circumstances leading to her fall. The only evidence regarding the accident was the testimony of Mrs. Hingle's great-granddaughter, Janel Cornu, and her granddaughter, Gay Cornu, neither of whom saw Mrs. Hingle until after she fell and cried for help.
At the time of the accident, Mrs. Hingle was staying temporarily at the home of her granddaughter, Gay Cornu, and her husband, Sterling Cornu. Although Mrs. Hingle lived with her son and daughter and son-in-law she was staying with the Cornus for a few days because her son was in the hospital and her daughter was unable to care for her own husband, who was ill, and for Mrs. Hingle at the same time.
All three members of the Cornu family, although defendant's insureds, testified for the plaintiffs, who are Gay Cornu's mother and uncle. All three agreed Mrs. Hingle was able to walk without a cane or other assistance but Sterling Cornu testified in his deposition that Mrs. Hingle could not walk unaided; both Gay and Janel Cornu admitted that Mrs. Hingle did not normally go out of the house by herself because of her age. Mr. Cornu's testimony was somewhat confusing, but he stated several times that decedent did not customarily venture outside unattended, although his trial testimony was that she did "walk alone," i.e., without physical assistance. Mr. Cornu recalled hearing his wife caution Mrs. Hingle not to go outside alone a short time before the accident. Gay Cornu testified her grandmother suffered from high blood pressure for which she saw her physician monthly. Mrs. Cornu stated her grandmother was plagued by swollen ankles and she said Mrs. Hingle wore bifocal glasses.
At the time of the accident Gay and Janel Cornu were in the house and Sterling Cornu was at work. Janel heard her great-grandmother calling and went into the backyard where she discovered Mrs. Hingle. Janel called her mother, Gay Cornu, for help. Janel and Gay testified Mrs. Hingle was lying in the backyard with her feet and legs on the paved area running behind the house, and her head and torso on the grassy portion of the yard. Mrs. Hingle was wearing her bifocals and had on pumps with 1 ½  2" heels.
Both Gay and Janel Cornu averred Mrs. Hingle's body was lying over an "indentation" or low area in the yard immediately adjacent to the walkway. Although Sterling Cornu was not present at the scene of the fall, he also testified to the existence of a depression in the ground near the walk. The three witnesses differ as to the location and extent of the alleged indentation. Janel estimated the area was a couple of inches deep, one to two feet long and a foot wide, and was located about 6-8 feet from the back gate. Gay testified the area was a "low spot" lying eleven feet from the rear gate. This description was at variance with her deposition testimony that the indentation was only 5-6 feet from the gate. At trial, Sterling Cornu testified he measured the distance of the low area from the gate as eleven feet; he described the indentation at one point as one foot wide, one foot long, and three inches deep. Later he stated the area was only 6-8 inches wide. When deposed Sterling estimated the depression was only one inch deep, but six feet long and two feet wide. Mr. Grisaffi, an adjuster for the defendant, testified he inspected the scene a year later when Mrs. Cornu pointed out the area where she found her grandmother lying. Mr. Grisaffi took photographs and testified the surface was firm and even, and there was no evidence of any "distress" that could have caused a person to fall.
Since there was no direct evidence as to the cause of Mrs. Hingle's fall, plaintiffs' case rests entirely on circumstantial evidence. In order to prevail a party relying *68 on circumstantial evidence "must exclude other reasonable hypotheses with a fair amount of certainty." Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972). While the circumstantial evidence need not negate all other possible causes of injuries, the evidence, when taken as a whole, must show that "the fact or causation sought to be proved is more probable than not." Boudreaux, supra, 264 So.2d at 627; Jordon v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
The trial court found several plausible explanations for Mrs. Hingle's fall. Her advanced age, high blood pressure, poor vision, the fact she was wearing "pumps" with heels, the possibility that Mrs. Hingle might have fainted, turned her ankle, or simply tripped on the pavement  all seemed more likely to the Trial Judge as the causation than the yard's indentation. The uncontradicted evidence that Mrs. Hingle was lying with her feet and legs on the pavement, not on the ground where the alleged indentation was located, would indicate she was walking on the cement walkway, not on the grass, when she fell. There was no testimony that Mrs. Hingle left the pavement nor was there any evidence as to the destination of her unaccustomed trip outside the house. Moreover, we note the evidence as to the existence, depth and location of the alleged depression was conflicting, and the testimony of decedent's close relatives was contradicted by the adjuster who did not observe any indentation.
When there is sufficient evidence before the trial court to furnish a reasonable basis for its finding, an appellate court should not disturb the Trial Judge's factfinding, even if other conclusions seem equally reasonable, in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). Considering the evidence in its entirety, we are satisfied the trial court's ruling was reasonable and proper.
Plaintiffs also contend the trial court erred in refusing to admit photographs taken by Mr. Cornu two years after the accident, which purport to show the "indentation." In view of our finding that the evidence was insufficient to prove any causal connection between the depression in the yard, assuming it existed, and Mrs. Hingle's fall, any error in rejecting the photographs would be harmless. We note, however, that the trial court's rejection of plaintiffs' proffer was based on his finding that the photographs did not accurately depict the Cornus' yard at the time of the accident, which occurred during the winter two years earlier when the grass was admittedly much sparser. This Court has reviewed the photographs, as well as those proffered by defendant (taken by its adjuster one year after the accident and also refused by the trial court) and we agree that they do not accurately depict the yard, as described by the witnesses, at the time of Mrs. Hingle's fall.
ACCORDINGLY, the judgment of the trial court is hereby affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] In view of our holding we find it unnecessary to decide whether the alleged indentation or low area constituted a vice or defect in the Cornus' yard, under LSA-C.C. Art. 2317, or a dangerous condition for which defendant's insured owed Mrs. Hingle a legal duty to warn or repair, under LSA-C.C. Arts. 2315 and 2316. We note, however, this case is very similar to Shipp v. City of Alexandria, 395 So.2d 727 (La.1981) where the Louisiana Supreme Court held a 2 ½" hole or indentation in a city street was not such a defect. The Court declared: "The fact that Mrs. Shipp fell does not elevate the condition of the street to that of an unreasonably dangerous vice or defect" at p. 729.