505 So.2d 1179 (1987)
Guy REINE
v.
S.L. GRILLOT.
No. 86-CA-610.
Court of Appeal of Louisiana, Fifth Circuit.
April 13, 1987.
Rehearing Denied May 18, 1987.
*1181 William B. Birner, Daniel E. Becneel, Jr., Reserve, for plaintiff/appellee and second appellant.
Donald Ensenat, Gerolyn P. Roussel, New Orleans, for appellant/defendant.
Before GAUDIN, KLIEBERT and WICKER, JJ.
WICKER, Judge.
This case arises from a dispute relative to an alleged obligation of the defendant/first Appellant, S.L. Grillot, Jr. (Grillot) not to remove protective debris from property belonging to plaintiff/second appellant, Guy Reine (Reine). Grillot seeks reversal of a judgment in Reine's favor. We reverse that portion of the judgment. A devolutive appeal has also been taken by Grillot for the dismissal of his reconventional demand. We affirm that part of the judgment. We also amend the judgment to allow credit to Grillot for payment of his expert fees.
Reine leased to Grillot a parcel of property situated in LaPlace, Louisiana which is located in St. John The Baptist Parish. The land is further situated along the batture adjacent to the East bank of the Mississippi River.
The original lease was dated November 19, 1976. It was amended December 11, 1979. Both versions included the agreement that the lessee shall return the leased premises to the lessor in like order and condition as received.[1]
*1182 Thereafter, Grillot subleased the property to Rogers Terminal & Shipping Corporation (Rogers) from March 11, 1980 to June 30, 1982. During the Rogers' sublease, debris allegedly accumulated and placed by Reine over many years for the purpose of river bank protection was removed.
Reine filed suit against Grillot claiming recompense for damage caused by the removal of the protective debris. On an exception of improper venue, the trial court ruled that venue was proper under the Code of Civil Procedure article 74 covering tortious acts. An exception of prescription was also overruled by the trial judge.
Grillot reconvened and demanded $49,000.00 for the cost of the same removal as an improvement to the value of the leased property.
Grillot now specifies the following errors:
1. That the court erred in the following respects:
A. In holding that the doctrine of "continuing tort" applied to suspend the running of prescription.
B. In failing to hold that the plaintiff's claims were barred by res judicata.[2]
C. In finding that the defendant had an obligation to restore the debris and awarding compensation for same.
D. In awarding plaintiff damages for loss of "high ground" as:
1. The bank encompasses the area from the low water mark to the high water mark.
2. In allowing the testimony of Mehmet Tumay and John Hill.
E. In allowing the deposition testimony of James E. Cicardo and Wilbur Rodrigue.
F. In excluding from evidence photographs taken by the plaintiff prior to the sublease to Rogers.
G. In allowing the plaintiff costs for experts for the defendant's expert witnesses.
H. By concluding that Mehmet Tumay testified that the plaintiff lost 1.68 acres, rather than 1.65 acres and calculating accordingly.
I. By dismissing defendant's Reconventional Demand.
Reine also specifies the following as error:
That it was error for the trial court to find that the only evidence regarding quantum for the loss of protective debris was the amount which a subcontractor received for some of the total salvage, and to award for this item of damage only Three Thousand Three Hundred ($3,300.00) Dollars.

PRESCRIPTION
Grillot filed the peremptory exception of prescription contending that Reine sued in tort and that that claim has prescribed. The exception was dismissed by the trial judge.
In determining the nature of the obligation sued upon, the court must look to the allegations. Federal Insurance Co. v. Insurance Co. of North America, 262 La. 509, 263 So.2d 871 (La.1972). Moreover, "when a party has been damaged by the conduct of another arising out of a *1183 contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, ... he may elect to recover his damages in either of the two actions. In such cases, the prescription applicable is determined by the character which plaintiff gives his pleadings and the form of his action." [Citations omitted]. 263 So.2d 871 at 872. See also Yandle v. Stan Weber and Assoc., 466 So.2d 610 (La.App. 5th Cir.1985).
An examination of Reine's petition and supplemental petition convinces us that his suit sounds in contract. In particular we note that in paragraph II, Reine filed suit pursuant to a lease entered into between himself and Grillot in December 1979. He alleges the following in paragraph II:
[p]etitioner, Guy Reine, leased a certain batture property located in LaPlace, St. John the Baptist Parish, Louisiana, to the defendant, S.L. Grillot, Jr. in December of 1979 consisting of 22.6 acres of batture. Provisions included in the lease provided that the defendant, S.L. Grillot, Jr., would do nothing to harm the integrity of the batture. [Emphasis supplied].
Reine further alleged that during 1982 and 1983 Grillot allowed "junk cars, barges and various other iron, steel and car debris to be removed" by Grillot's sub-lessee, Rogers. He further avers that from December, 1982, Rogers has continued to remove the debris. Reine asserts that the debris was used to protect the batture from erosion. As a result, Reine seeks recovery for the loss of his property.
Since damages for breach of contract are governed by the ten year prescriptive period provided in L.S.A.-C.C. Art. 3544,[3] Reine's claim for damages ex contractu from the alleged breach of the lease has not prescribed.
Appellant also argues that this court is bound by the trial court's adjudication regarding the application of L.S.A.-C.C.P. Art. 74 to the instant case in resolving the issue of venue.
Grillot filed the declinatory exception of improper venue. He asserted that venue was improper because he was domiciled in the Parish of Orleans, State of Louisiana and not in St. John the Baptist Parish where the action was filed.
L.S.A.-C.C.P. Art. 42 provides that an action against an individual "domiciled in the state shall be brought in the parish of his domicile."
The trial judge rendered judgment on March 9, 1984 whereby he found that the action was governed by the exception to L.S.A.-C.C.P. Art. 42 provided for in L.S. A.-C.C.P. Art. 74.
L.S.A.-C.C.P. Art. 74 provides in pertinent part that "[a]n action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained."
L.S.A.-C.C.P. Art. 74 therefore limits its application to damages arising from offenses and quasi-offenses or solely to actions in tort. Richardson v. Moore, 304 So.2d 425 (La.App.1973). Grillot chose not to file a writ application and proceeded to trial in St. John the Baptist Parish. Additionally, he does not assign as error[4] the trial judge's overruling his exception of venue. Grillot, however, argues that the trial judge's ruling regarding venue constitutes an adjudication that Reine's action sounds in tort and therefore subject to the *1184 prescriptive period of one year. L.S.A.-C. C.P. Art. 3536.[5]
Since no timely interlocutory writ or appeal was taken from the overruling of the exception of venue we agree that the venue issue is definitive. However, we do not agree with Grillot's assertion that the trial judge's ruling insofar as venue is concerned constitutes an adjudication insofar as prescription.
Although the trial judge specifically found "negligence" on the part of Grillot he was also mindful of the lease agreement. Thus, even the trial judge considered Grillot's obligation under the lease "to restore the premises to its original condition." Therefore, Grillot's argument that the trial judge only considered the action as one sounding in tort is misplaced.
Accordingly, Grillot's specification of error insofar as the failure of the trial judge to find that Reine's claim has prescribed is without merit. Furthermore, since Reine's claim sounds in contract, we pretermit discussion relative to whether the elements for a continuing tort have been met. See South Central Bell Telephone v. Texaco, Inc., 418 So.2d 531 (La.1982).

REINE'S PHOTOGRAPHS
Reine's expert, Dr. Mehmet Tumay (Tumay), an expert in the field of civil engineering with a subspecialty in soil foundation, testified that Reine lost 1.65 acres of "high ground". He also testified that the front footage on Reine's property had not changed.
Grillot contends that Tumay relied on photographs taken by Reine which were later determined to be inadmissible. He argues that the trial judge erred by relying[6] on Tumay's testimony relative to the photographs since that testimony had been stricken from the record. We find that the trial judge was manifestly erroneous for ruling that the photos taken by Reine were inadmissible and then relying on the stricken testimony in rendering his decision.
We note that the photographs taken by Reine were properly inadmissible and that the trial judge was correct in ruling that they were not admissible. Reine's testimony reveals that he did not know when some of these photographs had been taken. When asked to separate the photos taken before Rogers subleased the property from those taken after the sublease, he admitted that he was confused. We find no error in the trial court's ruling that the photographs were inadmissible since no time frame was given and their admission would not have any probative value in connection with establishing a causal connection between the date of Roger's sublease of the property and the erosion. See, Hingle v. Audubon Ins. Co., 427 So.2d 65 (La.App. 4th Cir.1983).
We find that the trial judge's reliance on the stricken photos and testimony with regard to those photos taken by Reine was erroneous.
Finding prejudicial error, we next consider whether this matter should be remanded for a new trial or whether we should decide the case based upon the record. In considering this issue we are mindful that our Louisiana Supreme Court has held that when an appellate court has all of the facts before it, it should render a judgment on the merits rather than remand the case for a new trial. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). See also, Lee v. Cook, 482 So.2d 760 (La.App. 5th Cir.1986), writ denied 484 So.2d 137 (La. 1986).
The Gonzales court reasoned that:
While the court remains the original forum for resolving factual and legal issues, the Louisiana Constitution expressly extends the jurisdiction of appellate courts in civil cases to the review of facts as well as law. [footnote omitted] Accordingly, appellate courts render judgments on the merits when the trial court has made a consequential but erroneous ruling on the exclusion or admission of *1185 evidence. Builliard v. New Orleans Terminal Co., 185 La. 924, 171 So. 78 (1936); Baker v. D.H. Holmes Co., Ltd., 285 So.2d 282 (La.App. 4th Cir.1973); Broussard v. State Farm Mutual Automobile Ins. Co., 188 So.2d 111 (La.App. 3rd Cir.1966), writ denied, 249 La. 713, 190 So.2d 233.
In addition to the constitutional authority, and consistent with it, there is a very practical consideration which encourages our appellate courts to exercise their jurisdiction to review factual findings: judicial economy. When the entire record is before the appellate court, remand for a new trial produces delay of the final outcome and congestion of crowded dockets while adding little to the judicial determination process. Although the appellate court does not gain the benefit of personally viewing the witnesses, it does have a complete record and the constitutional authority to decide. Id. 320 So.2d at 165-166.
More recently the Louisiana Supreme Court has applied the Gonzales holding to a judge trial. Daigle v. Coastal Marine Inc., 488 So.2d 679 (La.1986).
We must now determine whether we have all of the facts before us in order to render a judgment on the merits. For the reasons stated below we find that we do have all of the facts and that in the interest of judicial economy we are bound to review the record. Gonzales, supra; Daigle, supra; Lee, supra.

OTHER EVIDENTIARY RULINGS
Grillot also contends that the deposition testimony of James C. Cicardo and Wilbur Rodrigue should not have been admitted into evidence by the trial judge. He correctly notes that neither of these parties had been subpoenaed for trial. Counsel for Reine, however, argues that the possibility that both of these men would be unavailable was known to both counsel at the date of the deposition and that instead of subpoenaing the two witnesses he accepted their agreement to voluntarily come to trial if they would be in town.
Testimony at trial as to the unavailability of the two men consisted of Reine's counsel's statements that his secretary called Mr. Rodrigue and that his secretary spoke to Mrs. Rodrigue who informed her that the men were out of town. Grillot's counsel objected at trial to the use of hearsay evidence to establish the unavailability of the witnesses.
We agree with the Louisiana jurisprudence which holds that "[i]t is clear ... that hearsay evidence may not be considered in the judicial inquiry as to unavailability. Bland v. Interstate Fire and Casualty Co., 311 So.2d 480 (La.App. 4th Cir. 1975) [footnote omitted]." McKinley v. Dalton, 355 So.2d 1033, 1035 (La.App. 4th Cir.1978).
Therefore, the trial court should not have considered the testimony by Reine's counsel regarding information obtained by his secretary. Once the hearsay evidence is excluded, there is a lack of sufficient proof of unavailability since no subpoena was ever served.
Accordingly, the trial judge should not have relied on these witnesses' testimony. In his reasons for judgment the trial judge considered the testimony of Cicardo and Rodrigue, individuals who work at the Kenner Marine & Machinery Corporation, which is adjacent to the Reine property as "the best evidence of all". In particular, he relied on their testimony that once Reine's artificial bulkhead was removed and the batture was smoothed out, portions of the batture were seen to be disappearing into the river.
Although the trial judge erred by considering the deposition testimony, we find that such error was harmless. These witnesses could only testify that a loss occurred. They did not offer testimony distinguishing normal river erosion from erosion allegedly caused by Rogers.
Grillot also specifies as error, the trial judge's allowing Jack Hill (Hill) to testify on rebuttal. The trial judge excluded Jack Hill's (Hill) testimony in Reine's case in chief since Hill was not listed on the pre-trial order and this witness was not listed in answer to an interrogatory propounded by Grillot's counsel. Moreover, the record reflects *1186 that counsel only had notice of this potential expert witness on the day of trial.
Reine's counsel, however, sought to use Hill as a "rebuttal" witness. The trial judge allowed his testimony on rebuttal and noted that Hill's testimony was used to rebut defendant's expert witnesses.
Our review of Hill's testimony reveals that he was tendered as an expert in aerial photography and that he took photos of Reine's property in order to determine the amount of "high ground" he lost. He determined that 1.65 acres of "high ground" was lost. None of defendant's experts testified as experts in aerial photography. In addition, plaintiff's expert, Tumay, admitted that he was not an expert in aerial photography.
The testimony given by Hill provided another specialty for Reine to use in determining loss of his property. He was, therefore, testifying with regard to Reine's case-in-chief. Simply because he is labeled a "rebuttal witness" does not now make his testimony admissible when the same testimony would have been inadmissible in Reine's case in chief. See, Hawkins v. Clark, 294 So.2d 259 (La.App. 1st Cir. 1974).
Although we find that the trial judge erred by including Hill's testimony as a rebuttal witness, we find this to be harmless since his testimony did not provide Reine with evidence to meet his burden of proof insofar as determining what portion of the soil erosion, if any, was attributable to the removal of debris by Rogers and what portion was due to natural factors.
Tumay testified that he used aerial photographs taken by Hill as a tool to visually determine soil erosion. Since Tumay was not qualified as an expert in the area of aerial photography, Grillot's counsel objected to the admissibility of opinion testimony regarding an interpretation of the photographs. The trial judge ruled that the photographs were merely a diagnostic tool and held that the testimony was admissible; however, he also stated that the testimony would go to the weight of the witness' testimony.
Thus, any lack of expertise on the part of Tumay with regard to interpretation of aerial photography went to the weight of his testimony and not to the admissibility. We cannot say that the trial judge was manifestly erroneous in ruling accordingly. See, Holmes v. J. Ray McDermott & Co., 734 F.2d 1110 (C.A. 5th Cir.1984).
Even assuming that the trial court erred by allowing the testimony of Tumay with regard to the photographs, we find that Reine still had not met his burden of proof for the reasons stated below.
With regard to the rulings complained of we conclude that the trial judge erred by relying on Reine's photographs and the testimony relative to these when the photographs were inadmissible. We find this error to be prejudicial for the reasons stated. We do note, however, that these photographs are a proffered exhibit and that the testimony relative to these remains in the record.
We further conclude that while the trial judge erred by allowing the deposition testimony of James C. Cicardo and Wilbur Rodrigue, as well as the rebuttal testimony of Hill, these errors were harmless.
Finally, we find no merit to Grillot's contention that the trial judge erred by allowing Tumay's testimony relative to Hill's aerial photographs.

REINE'S CLAIM FOR DAMAGES
In the interest of judicial economy we have reviewed the record for any evidence to show that the erosion which occurred was caused by Rogers. We conclude that Reine did not meet his burden of proof.
Reine's expert, Tumay, an expert in the field of civil engineering with a subspecialty of soil foundation, testified that Reine lost 1.65 acres of "high ground" and also testified that the front footage on Reine's property had not changed. This court need not consider whether a distinction should be made between "high ground" and the property between the ordinary high and ordinary low stage of the water (which no *1187 one testified as having changed)[7]. This court's reason for not having to consider the distinction between "high ground" and the definition used in Article 456 is that the record does not support the conclusion that Reine suffered damages caused by Rogers' removal of debris.
Tumay's testimony does not establish any causal relationship between the removal of the debris and the soil erosion by a preponderance of the evidence. His testimony in pertinent part is as follows:
Q. You are not familiar with the channel movement of the Mississippi River between Baton Rouge and New Orleans, are you?
A. No.
Q. And you don't know the channel that ships follow going up and down the river.
A. No, I am not a navigator.
Q. You are not familiar with what effect the river traffic has on Mr. Reine's property.
A. I don't have that information and I don't think I need that information.
Q. When you arrived at your conclusion, did you check to see whether or not Mr. Reine's property had ever suffered any bank loss or failure at any time in its history?
A. I did not go back to 1880, no. I just looked at the last ten (10) years.
Q. In fact, you did not go back from 1978, did you?
A. No.
Q. In fact, your 1.65 acres was determined from 1978 to 1985; isn't that correct?
A. That's right.
Rogers leased the property from 1980 to 1982. Reine did not prove that the loss of land in the amount of 1.65 acres resulted from Rogers' removal of the debris.
While Reine proved that erosion occurred, he failed to establish whether the erosion occurred as a result of changes in the river or as a result of the removal of the debris. Additionally, Reine did not introduce any evidence that he could no longer lease the property or that the rentals he received were significantly below the amount he received prior to the removal of the debris.
The judgment awarding damages[8] to Reine is hereby reversed. However, we affirm the dismissal of Grillot's reconventional demand.

GRILLOT'S RECONVENTIONAL DEMAND
Grillot's reconventional demand seeking the cost of labor for the removal of the debris was dismissed. Of significance is the fact that there is no testimony from Grillot indicating that he incurred these expenses. Instead, Rogers actually performed *1188 the work and incurred the removal expenses. We therefore need not address appellant's arguments regarding the value to be placed on the removal.
Grillot stated that to his knowledge Rogers had hired people to come and clear the land. Additionally, he testified that he did not keep a record of any expenses he incurred when he took over the lease from a prior lessor. Finally, he testified that he had "no record to indicate any improvement on that property."
Wallace Mabury, Executive Vice-President and General Manager of Roger's from March 11, 1980 through June 30, 1982 (the dates of the sublease) testified that Rogers paid $51,000.00 for the removal of the debris.

CREDIT FOR PAYMENT OF EXPERTS
The final issue is Grillot's contention that the trial judge erred by awarding Reine the expert witness fees for Grillot's expert witnesses. Grillot argues that since Reine did not incur the expenses for his (Grillot's) experts that Reine should not be allowed that sum of money. In brief, Reine's counsel admits that "Clearly [Grillot] is credited for paying [his] experts."
The trial judge decreed that:
[t]here is therefore Judgment in favor of Guy Reine and against S.L. Grillot, Jr. in the full sum and amount of $70,500.00, in addition to legal interest from the date of judicial demand until paid and for all costs of this proceeding, including the expert witness fee of Dr. Mehmet Tumay in the amount of $800.00; the expert witness fee of Bradley Oubre in the amount of $375.00; the expert witness fee of Roy A. Odom in the amount of $450.00; the expert witness fee of R. Bradford Rogers in the amount of $450.00; and the expert witness fee of Pearl P. Burke in the amount of $600.00.
Since there is no dispute between the parties with regard to Grillot's being allowed credit for paying his own experts, we therefore amend that part of the judgment to tax the expert witness fees to Grillot subject to a credit for those fees Grillot paid to his own experts.
Additionally, for the reasons stated, we reverse the granting of judgment on the main demand in favor of plaintiff/second appellant, Reine. We also affirm that portion of the judgment dismissing the reconventional demand as well as in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AMENDED AND RENDERED.
NOTES
[1] At oral argument Reine's counsel stated that the lease with Grillot is still in existence and does not terminate until 1990.
[2] We note that a formal pleading raising the peremptory exception of res judicata was never filed in the trial court; nor was it filed in this court prior to the submission of the case at oral argument.

L.S.A.-C.C.P. Article 2163 provides in pertinent part that:
[t]he appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record. [Emphasis supplied].
Whenever a peremptory exception is raised only in brief or oral argument and not by the filing of a formal pleading, then the issue is not properly before the court. Taylor v. Dupree, 484 So.2d 986 (La.App. 3rd Cir.1986), writ denied 488 So.2d 201 (La.1986); Barfield v. Barfield, 483 So.2d 1085 (La.App. 2nd Cir.1986).
While we find that the exception of res judicata is not properly before us, we do note that our examination of the alleged compromise indicates that this specification lacks merit.
[3] The substance of former article 3544 is now contained in article 3499 which was effective January 1, 1984, Acts 1983, No. 173, Section 1.
[4] As noted in Aetna Insurance Co. v. Naquin, 488 So.2d 950, 952 (La.1986):

The erroneous overruling of an exception of improper venue should be appealed after the interlocutory judgment as that is the appropriate means of relief. Herlitz Construction Co. v. Hotel Investors, Inc., 396 So.2d 878 (La. 1981) ... The rules of venue are designed to protect defendants from being unduly burdened by litigating a matter away from their domiciles. [One] cannot seriously urge that retrying the matter near home would be less of a burden having already tried the case elsewhere.
[5] The substance of former article 3536 is now contained in article 3492 which was effective January 1, 1984, Acts 1983, No. 173, Section 1.
[6] The trial judge discussed these photographs in his reasons for judgment.
[7] L.S.A.-C.C. Art. 456 provides that a riparian landowner owns the area between the "ordinary low and the ordinary high stage of the water."
[8] We note a typographical error in the trial judge's reasons for judgment when he concluded that Reine lost 1.68 acres rather than the 1.65 acres which was discussed in testimony.

Furthermore, we note that the trial judge erred by essentially permitting Reine to have a double recovery.
Reine was awarded damages for the loss of his property in addition to an amount for damages to rebuild the debris. He therefore awarded a double recovery to Reine. On one hand the trial judge is requiring Grillot to replace the artificial bulkhead and thus reclaim property which now belongs to the state and on the other hand, he is awarding his damages for the property he lost.
Moreover, replacement of the debris on Reine's property would obstruct the public use of the banks of a navigable waterway and would be in violation of Louisiana law. L.S.A.-C.C. Art. 456, 458. Riparian landowners own the right to erect and maintain on the batture buildings and improvements as may be required for commerce, navigation, or other public purposes. L.S.A.-R.S. 9:1102.1. However, to exercise this right, the landowner must obtain a permit from the proper governing authority to authorize such work. Kliebert Educational Trust v. Watson Marines Services, 454 So.2d 855, 858 (La. App. 5th Cir.1984).
The evidence in the record indicates that Reine did not have a permit to place the debris on his batture. It further indicates that the debris was preventing the use of the waterfront and the use of the batture incidental to the navigable character of the river. For the trial court to order that the debris be replaced is contrary to law.