KLEES, Judge.
This is an action involving a motorcycle accident on Louisiana Highway 61 in which plaintiff sustained severe injuries. Plaintiff, Claude Hubbard, instituted this action against the Louisiana Department of Transportation and Development alleging that defects in the road surface caused the accident. The trial court ruled in favor of the DOTD. We affirm.
On July 25, 1984, Claude Hubbard was operating his motorcycle on Louisiana Highway 61 (Airline Highway) heading west. Highway 61 is a four lane highway with two lanes for west bound traffic and two lanes for eastbound traffic. It had been raining, and there were puddles on the road. Mr. Hubbard stopped at a red light in the right lane behind an 18 wheel tractor-trailer truck. When the traffic signal changed to green, traffic began moving, and Mr. Hubbard decided to change lanes in order to pass the truck which was still in the right lane but now moving forward. The testimony reveals that at some point during the passing maneuver, Mr. Hubbard lost control of his motorcycle, and both he and the motorcycle slid underneath the trailer of the truck and were dragged a considerable distance down the highway before the truck finally came to a stop. Mr. Hubbard was seriously injured as a result of the accident.
Mr. Hubbard brought this suit against the DOTD alleging that defects in the highway caused him to lose control of his motorcycle. Proceedings were held before a commissioner, who found that while there were defects in the highway, those defects were not the cause of the accident. After a hearing was conducted in the trial court, judgment was rendered in favor of DOTD, affirming the findings of the commissioner. Mr. Hubbard has appealed.
Mr. Hubbard alleges that the DOTD is liable under theories of strict liability and negligence. Under either theory, the plaintiff must prove that the defect or the alleged negligent act or omission caused the damages sustained. South Central Bell Tel. Co. v. Hartford Ace. & Indem. Co., 385 So.2d 830 (La.App. 1st Cir.1980), writ den. 386 So.2d 356 (1980); Breithaupt v. Sellers, 390 So.2d 870 (La.1980); Hingle v. Audubon Ins. Co., 427 So.2d 65 (La.App. 4th Cir.1983).
There were several witnesses to the accident. Unfortunately, the testimony of those witnesses, who were understandably shaken by the tragedy that they had seen, is very hazy. Many of the witnesses, including the plaintiff himself, could not remember the location of the defects which allegedly caused the accident. However, the testimony of Mr. Lawrence Taylor, who observed the accident from another vehicle behind the plaintiff, indicated that Mr. Hubbard completed the lane change and subsequently hit a puddle or pothole in the middle of the left lane causing him to lose control of the motorcycle. In addition, the police officer called to the scene to investigate the accident testified that he interviewed two witnesses shortly after the accident who stated that plaintiff was applying extreme pressure to the throttle and after changing lanes hit a wet spot causing him to lose control. The officer made no note of any defect in the road which might have caused the accident.
The plaintiff produced several photographs of the section of highway in question, some of which were taken by the state police on the night of the accident. The most revealing photographs, however, were those taken by an independent party during the daytime at some point subsequent to the accident. Those photographs revealed one pothole which was in the right lane approximately 16-18 inches to the right of the center line and a crack and shallow depression in the left lane running parallel to the direction of travel approximately 16-18 inches to the left of the center line. Experts for both sides agreed that these defects could have caused a motorcycle operator to lose control during a lane change. Both experts, however, further testified that had either of the above defects been the cause of Mr. Hubbard’s accident, the motorcycle would have fallen and slid to the left towards the neutral ground and not to the right and under the tractor-trailor truck.
*870 The court below attached particular significance to the testimony of the defendant’s expert, Mr. Andrew McPhate. He gave his version of the accident based upon the deposition of Mr. Hubbard, the photographs mentioned above and the police report. He stated that the plaintiff was executing a passing maneuver. He had successfully completed the lane change and was moving back to his right (while still in the left lane) toward the truck when he lost control. Defendant’s expert testified that had Mr. Hubbard encountered trouble with the defects on the highway it would have been early in the maneuver while he was still moving into the left lane. If the motorcycle had gone down at that point it would have slid to the left. In addition, Mr. Hubbard would not have had time to catch up to the truck. This version of the events leading up to the accident is consis-tant with the evidence presented in this case.
According to the testimony, Mr. Hubbard was approximately 25 feet behind the truck when he executed the lane change. In order for the defects discussed above to have caused the accident, Mr. Hubbard would have had to lose control during the lane change and fall in a direction opposite from that in which his momentum was carrying him, all the while accelerating to catch the truck in front of him which was itself accelerating from a stop. While both the commissioner and the trial judge agreed that there were indeed defects in the highway, neither of them found that those defects were a cause of the accident. We agree. The weight of the evidence in the record persuades us that the location of the defects is such that in all probability they could not be a contributing cause of the accident.
The plaintiff additionally complains that the trial court refused to reverse the commissioner for failing to allow the testimony of plaintiff’s other “expert.” However, the court has wide discretion in determining the competency of expert witnesses. Denton v. Mammelli, 447 So.2d 75 (La.App. 4th Cir.1984). In this case the “expert” in question was Joseph Zambo, a retired motorcycle riding instructor with no technical background. The trial court was clearly within its discretion in determining that Mr. Zambo did not qualify as an expert in motorcycle accident reconstruction.
We conclude, as did the trial court, that there was no liability on the part of the DOTD.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.