732 So.2d 1230 (1999)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY as subrogee of William E. Franklin
v.
George BERTHELOT, et al.
No. 98-C-1011.
Supreme Court of Louisiana.
April 13, 1999.
*1231 Michael H. Hogg, Perlis & Hogg, Metairie, for Applicant.
Charles S. Green, Jr., Ward & Clesi, New Orleans, for Respondent.
KNOLL, Justice.[*]
This case presents the issue of whether a tort victim can recover sales tax from a tortfeasor who causes the total loss of the tort victim's vehicle. William E. Franklin, an insured of State Farm Mutual Automobile Insurance Co. (State Farm), and George Berthelot, an insured of Southern United Fire Insurance Co. (SUFIC), were involved in a vehicular accident on April 13, 1995. On that date, it is undisputed that Berthelot's automobile crossed the centerline and struck Franklin's vehicle, a 1986 Toyota Corolla. As a result of the accident, Franklin's auto was declared a total loss.
State Farm's policy with Franklin, its insured, limits liability for comprehensive and collision coverages as follows:
The limit of our liability for loss to property or any part of it is the lower of:
1. the actual cash value; or
2. the cost of repair or replacement.
Actual cash value is determined by the market value, age and condition at the time the loss occurred. Any deductible amount that applies is then subtracted.
State Farm's policy further provides that "the right of recovery of any party we pay passes to us." Pursuant to its policy, State Farm paid $3,388 to Franklin as compensation for the total loss of the car. State Farm calculated its payment to its insured as follows:

Base price of vehicle $3,200.00
Sales Tax $ 288.00
 __________
Actual cash value $3,488.00
Less deductible ($ 100.00)
 __________
Amount paid insured/owner $3,388.00

The $288 State Farm added to its calculation represented a reimbursement for sales tax. SUFIC then paid State Farm for the cash value of Franklin's vehicle, but refused to pay the sales tax. Thereafter, State Farm, as insurer and subrogee of Franklin, brought suit against SUFIC and Berthelot, seeking repayment of the sales tax assessed on Franklin's automobile.[1]
After issue was joined, State Farm, relying on La.Civ.Code art. 2315, moved for summary judgment contending that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Berthelot and SUFIC filed a cross-motion for summary judgment, basing their position on State Farm Mut. Auto. Ins. Co. v. Midland Risk Ins. Co., 96-1281 (La.App. 1 Cir. 6/20/97), 697 So.2d *1232 293, 294 (holding that market value of a totaled vehicle does not include an amount for sales tax).[2] The trial court granted State Farm's motion, mandating that Berthelot and SUFIC pay the sales tax, and denied SUFIC's.
The Court of Appeal, Fourth Circuit, affirmed, with one judge dissenting. State Farm Mut. Auto. Ins. Co. v. Berthelot, 97-1945 (La.App. 4 Cir. 3/25/98), 709 So.2d 1053. The appellate court rested its decision to uphold the award of sales tax on two broad principles. First, the court invoked the general principles of tort law which have evolved from La.Civ.Code art. 2315, namely, that the primary objective of the award of general damages is to restore the injured party to the state that the party was in immediately before the injury or accident. Second, the appellate court found that La.R.S. 22:655(D)[3] enunciated a public policy which supported the process of making the insured whole after that party incurs injury or property damage.
We granted the writ application of Berthelot and SUFIC to consider the correctness of the appellate court's decision, and to resolve the conflict between the circuits on this issue. State Farm Mut. Auto. Ins. Co. v. Berthelot, 98-1101 (La.6/19/98), 720 So.2d 1207, 1998 WL 485393. For the following reasons, we reverse, finding that sales tax is not a recoverable item of damages in this setting.

ANALYSIS
From the outset, we recall that State Farm's claim against Berthelot and SUFIC is a subrogation action against the tortfeasor and his liability insurer. Although we recognize that the relationship between State Farm and Franklin, its insured, had its origin in their contract of insurance, this conventional subrogation does not govern State Farm's subrogation rights, but rather the codal provisions relevant to subrogation govern the relationship between State Farm and Berthelot, the tortfeasor, and SUFIC, the insurer of the tortfeasor. In other words, notwithstanding the contractual relationship between Franklin and State Farm, the subrogation action State Farm has against the tortfeasor Berthelot, is not a conventional subrogation, but a legal subrogation, i.e., subrogation by operation of law. La.Civ. Code art. 1825. In subrogation, the insurer has no greater rights than those of its insured. Egros v. Pempton, 606 So.2d 780, 784 (La.1992). If the insurer pays the whole obligation to its insured, it is completely subrogated to the insured's rights against the tortfeasor. Id. Even though this case is presented as a subrogation claim, for reasons assigned herein, our analysis of the relationship between the subrogee (State Farm) and the tortfeasor (Berthelot/SUFIC) is governed by the rights available to the tort victim. La.Civ. Code art. 1830. Accordingly, this opinion will examine the compensation rights of the tort victim in order to assess the legal efficacy of State Farm's position.

Subrogation
State Farm's contention throughout this litigation has been that it is the legal and conventional subrogee of Franklin, its insured. As such, it argues that it stepped into its insured's shoes when it paid his property damage claim. Accordingly, State Farm contends that it assumed whatever rights Franklin had against *1233 SUFIC. On the other hand, SUFIC asserts that State Farm may have stepped into its insured's shoes, but only to the extent that it provided coverage to its insured. Thus, SUFIC argues that because State Farm's policy did not specifically obligate it to reimburse sales tax on the totaled vehicle to its insured, its payment thereof was outside of its policy limits and, therefore, SUFIC was not liable for its reimbursement.
La.Civ.Code art. 1825 explains that subrogation is the substitution of one person to the rights of another. When subrogation results from a person's performance of the obligation of another, that obligation subsists in favor of the person who performed it who may avail himself of the action and security of the original obligee. An original obligee who has been paid only in part may exercise his rights for the balance of the debt in preference to the new obligee. La.Civ.Code art. 1826.
Subrogation is a legal fiction whereby payment by a third person, or from the original debtor with funds provided by a third person, extinguishes an obligation of the original creditor. The third person then steps into the shoes of the original creditor, acquiring the right to assert the actions and rights of the original creditor. Barreca v. Cobb, 95-1651 (La.2/28/96), 668 So.2d 1129; see SAÚL LITVINOFF, THE LAW OF OBLIGATIONS 268 (1992) (referencing 7 PLAINIOL ET RIPERT, TRAITÉ PRATIQUE DE DROIT CIVIL FRANCAIS 625 (2d ed.1954)).
Legal subrogation is provided in pertinent part in La.Civ.Code art. 1829(3):
Subrogation takes place by operation of law:
* * *
(3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment.
In Aetna Ins. Co. v. Naquin, 488 So.2d 950, 954 (La.1986), we held that legal subrogation as provided in La.Civ.Code art. 1829(3) is at the heart of the relationship between a property insurer, who pays an amount in settlement of its insured's property damage claims, and the negligent third-party who caused the damage. In such a case, when subrogation arises from the performance of the insurer's obligation to pay the property damage which resulted from the negligent action of a third party, that obligation survives in favor of the insurer who paid it, who now may enforce the action that its insured originally had against the third-party.
In the case sub judice, we find that legal subrogation is the nexus between State Farm and Berthelot and SUFIC. State Farm's right to recover from Berthelot and SUFIC for the debt it paid its insured would arise from La.Civ.Code art. 1829(3) even though no contractual subrogation clause existed in State Farm's insurance policy with Franklin. Aetna Ins. Co., 488 So.2d at 954; see also Martin v. Louisiana Farm Bureau Cas. Ins. Co., 94-0069 (La.7/5/94), 638 So.2d 1067, 1069.
Having found that legal subrogation is the framework to properly examine the issue presented, we next point out that the effects of legal subrogation are circumscribed and carefully spelled out in the Civil Code. In particular, La.Civ.Code art. 1830 provides:
When subrogation takes place by operation of law, the new obligee may recover from the obligor only to the extent of the performance rendered to the original obligee. The obligee may not recover more by invoking conventional subrogation. (emphasis added).
It is because of this codal provision that we need not examine the language of State Farm's contract which defines its payment obligations to its insured. It cannot be gainsaid that the extent of Franklin's right to recover from State Farm is contractually set out in his policy of insurance, and as borne out in its actions, State Farm paid sales tax on its insured's totaled vehicle *1234 pursuant to its belief that it owed this because of its contractual obligations.[4] However, State Farm, as the new obligee by virtue of legal subrogation, may not take advantage of its conventional subrogation agreement to increase its recovery from the tortfeasor and his insurer beyond the debt that the tortfeasor may owe under Louisiana's tort law. La.Civ.Code art. 1830. Simply stated, State Farm may only recover from SUFIC the debt that Berthelot, the negligent tortfeasor, owed to Franklin, the victim of Berthelot's negligence. Therefore, we must determine whether, under the facts presented, Franklin as a tort victim can recover sales tax from a tortfeasor for the total loss of his vehicle.

Damages
Every act of man that causes damage to another obliges him by whose fault it happened to repair it. La.Civ.Code art. 2315. One injured through the fault of another is entitled to full indemnification for damages caused thereby. Coleman v. Victor, 326 So.2d 344 (La.1976); Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). In such a case, "[t]he obligation of defendant ... is to indemnify plaintiffto put him in the position that he would have occupied if the injury complained of had not been inflicted on him." Coleman, 326 So.2d at 346, quoting Lambert v. American Box Co., 144 La. 604, 613, 81 So. 95, 98 (1919).
As a general rule, the recovery of damages to a vehicle is limited to the cost of repair. Giles Lafayette v. State Farm Mut. Auto. Ins. Co., 467 So.2d 1309 (La. App. 3 Cir.), writ not considered, 472 So.2d 911 (La.1985). However, where a vehicle has been totally destroyed or so badly damaged that the cost of repair exceeds its value, the measure of damages is the value of the vehicle just before the accident, less its salvage value, if any. Holt v. Rapides Parish Police Jury, 574 So.2d 525 (La. App. 3 Cir.1991); Calk v. Grain Dealers Mut. Ins. Co., 508 So.2d 624 (La.App. 2 Cir.1987); Brown v. Morgan, 449 So.2d 606 (La.App. 1 Cir.1984); Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1 Cir.1983); Bernard v. Fidelity & Cas. Co. of N.Y., 186 So.2d 904 (La.App. 1 Cir. 1966).
It is undisputed in the case sub judice that Franklin's vehicle was a total loss. Since repair was not an option, whether State Farm can recover the sales tax payment against Berthelot and SUFIC hinges on our determination of whether sales tax constitutes an element of the value of Franklin's vehicle just prior to the accident which Franklin could have recovered from Berthelot and SUFIC.
Initially, State Farm makes much ado over the fact that it would have been liable for sales tax if it would have repaired or replaced its insured's vehicle. Thus, it argues that such treatment is equally applicable to the present instance. This argument, though correct with regard to repair and replacement, has no relevance to the scenario presented. To better understand why this argument is misplaced, it is necessary to briefly examine the nature of a sales tax.

Sales Tax
BLACK'S LAW DICTIONARY 1458 (6th ed.1990) describes a tax as:
A ratable portion of the produce of the property and labor of the individual citizens, taken by the nation, in the exercise of its sovereign rights, for the support of government, for the administration of the laws, and as the means for continuing in operation the various legitimate functions of the state.
In particular, a sales tax is a distinct and separate charge which the retail seller is required to collect as a pass through entity for the benefit of the state *1235 and locality. Louisiana's "sales and use tax is an excise tax, a tax upon the transaction itself, not the property involved in the transaction." BRUCE J. ORECK, LOUSIANA SALES & USE TAX 2.1 (2d ed.1996) (citing Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958); Mouledoux v. Maestri, 197 La. 526, 2 So.2d 11 (1941); and Fontenot v. Searcy & Pfaff, Ltd., 78 So.2d 204 (La.App.Orleans 1955)). With regard to vehicle sales, Louisiana law provides that the general rule is that sales tax is due upon the sale price of the vehicle. La.R.S. 47:302 A(1).[5] Likewise, it has been statutorily recognized that the servicing and repair of automobiles give rise to the imposition of a tax. La.R.S. 47:301(14)(g)(i).
A review of this thumbnail sketch of Louisiana's sales and use tax shows the fallacy of State Farm's position. Clearly, had State Farm undertaken the repair or replacement of its insured's vehicle, there would have arisen an event or transaction for which a tax could have been imposed. In such instances tax liability arises by operation of law. However, since no sale, repair, or replacement has occurred in the present case, no taxable event has taken place. Thus, although any of these transactions can give rise to the imposition of a tax, none has occurred in the case at hand.
Moreover, while it may be said that sales tax may increase the cost to the buyer in the retail market, it is equally clear that it does not increase the value of the property purchased. Simply stated, with specific regard to vehicle sales, a sales tax is a mandatory cost which state and local governments have added to the sale transaction, over and above the value of the purchased property. Cf. People v. Medjdoubi, 173 Misc.2d 259, 661 N.Y.S.2d 502 (1997); People v. Barbuto, 106 Misc.2d 542, 434 N.Y.S.2d 120 (Sup.Ct. 1980); People v. Irrizari, 5 N.Y.2d 142, 182 N.Y.S.2d 361, 156 N.E.2d 69 (1959); State v. Alexander, 12 Kan.App.2d 1, 732 P.2d 814 (1987); Tunnell v. State, 99 N.M. 446, 659 P.2d 898 (1983); State v. Adams, 39 Ohio St.3d 186, 529 N.E.2d 1264 (1988). Accordingly, the inescapable conclusion is that Franklin's vehicle did not have a higher value when it was totaled simply because a sales tax was paid when it was originally purchased nine years earlier. This conclusion is further buttressed by the industry-wide use of the N.A.D.A. OFFICIAL USED CAR GUIDE which values a vehicle without reference to sales tax. Much like State Farm's policy, N.A.D.A. references the vehicle's market value, taking into consideration its age and condition at the time of the loss.
We further observe that in addressing the award of damages for totaled vehicles, this state's jurisprudence has not required the negligent tortfeasor to replace the damaged vehicle.[6]Falgout v. Wilson, 531 So.2d 492 (La.App. 1 Cir.), writ denied, 532 So.2d 154 (La.1988). To the contrary, the jurisprudence has firmly recognized that the measure of damages is the value of the vehicle just before the accident, less its salvage value, if any. Holt, 574 So.2d at 525; Calk, 508 So.2d at 624; Brown, 449 So.2d at 606; Sibley, 442 So.2d at 627; Bernard, 186 So.2d at 904. As such, it is a characteristic of market valued damage awards that transactional costs are ignored. DAN B. DOBBS, THE LAW OF REMEDIES § 3.3(3) (2d ed.1993). Accordingly, it is clear that the payment of market value of the vehicle, without the payment of sales tax, restores Franklin "to the position *1236 that he would have occupied if the injury had not been inflicted on him." Lambert, 81 So. at 98; see also Roman Catholic Church v. Louisiana Gas, 618 So.2d 874, 876 (La.1993).[7]
Therefore, we find no merit to State Farm's contention that its subrogation rights entitle it to reimbursement from Berthelot and SUFIC for the sales tax it paid its insured.

Public Policy
We likewise find no merit to the appellate court's reliance on public policy to support its holding. Although La.R.S. 22:655(D), supra n. 5, represents that all liability policies "are executed for the benefit of all injured persons ... for any legal liability said insured may have[,]" the jurisprudence has fleshed out what constitutes the legal liability of negligent tortfeasors in instances where a vehicle is totaled.[8] As explained earlier herein, sales tax does not increase the vehicle's value. Since the injured person, Franklin in the present case, receives the market value of his vehicle just prior to the accident, we cannot say that he has not been fully compensated. Thus, we find no merit to the contention that public policy demands that an injured person be paid a sales tax based upon the value of the totaled vehicle.

DECREE
For the foregoing reasons, the judgments of the lower courts are reversed and set aside. There being no genuine issues of material fact, we hereby grant the motion of George Berthelot and Southern United Fire Insurance Co. for summary judgment, and the action of State Farm Mutual Automobile Insurance Co. against them is hereby dismissed with prejudice.
REVERSED AND RENDERED.
VICTORY, J., concurs.
LEMMON, J., Dissenting.
The majority's statement that no taxable event has occurred in the present case, while accurate, begs the question of whether the tortfeasor should be held responsible for causing the tort victim to incur the taxable event of buying a vehicle substantially identical to the vehicle the tortfeasor destroyed. The only way the tort victim can be restored to the position he occupied just prior to the tort is to purchase a comparable vehicle, and no one can do this without paying sales tax.
The recovery of sales taxes necessary to purchase a comparable vehicle clearly falls within the literal wording of the obligation imposed upon the tortfeasor by La. Civ. Code art. 2315 to repair damages. Whether Article 2315 should be limited to exclude these particular damages, as a matter of policy, is a decision for this court. I am not persuaded by the intermediate court decisions relied upon by the majority that we should limit recovery of damages under Article 2315 to the "value"[1] of the *1237 vehicle just before the accident, and I perceive no policy reason to do so.
NOTES
[*] Marcus, J., not on panel. Rule IV, Part 2, § 3.
[1] The record contains no mention of Franklin's personal injuries or any claims that he may have pursued in that regard.
[2] The First Circuit did not elaborate on its holding and gave no basis for its conclusion on the sales tax issue.
[3] La.R.S. 22:655(D) provides:

It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy.
[4] Because of our determination of this issue in the context of legal subrogation, we do not comment on State Farm's reliance on the language of its insurance policy as authority for the proposition that it owed sales tax to its insured.
[5] Although this is the general rule, when a part of the purchase price is represented by a vehicle traded in, the sales or use tax is payable on the total purchase price, less the market value of the trade-in. La.R.S. 47:305 C(1). Similarly, rebates and cash discounts offered by either the dealer or the manufacturer reduce the sale price subject to sales or use tax. La.R.S. 47:301(3)(e), 301(13)(b).
[6] If replacement were jurisprudentially required, this would give rise to an event or transaction which would, by operation of law, give rise to liability for the payment of sales tax. However, such is not the case.
[7] The thrust of the Roman Catholic Church decision was to insure the compensation of the victim to the full extent of his loss. Although the case involves immovable property and frowns upon the use of an arbitrary formula in the assessment of property damage, the utilization of such a formula for the preaccident valuation of the movable property in the present case (value of the vehicle just before the accident, less its salvage value) does not undermine the assessment of the loss suffered. Reference to the age and condition of a totaled vehicle is tailored to the specific facts and circumstances presented, constitutes a highly workable methodology for making good the victim's loss, and yields full compensation for the loss.
[8] La.R.S. 22:655(D) further recognizes that although all liability policies are "executed for the benefit of all injured persons," such public policy is subject "to the terms and limits of said policy."
[1] The term "value" has different meanings in different contexts. The "value" of a vehicle to the tort victim who has to purchase it (by paying the sales price plus tax) to replace the vehicle destroyed by the tortfeasor is different from the "value" of the same vehicle to the person who sells it to the tort victim (and receives only the sales price).

In my view, the "value" of the destroyed vehicle, at the time just prior to the accident when the tort victim had no intention of selling it, has little relevance in determining reparation for tort-caused damages.