762 So.2d 1193 (2000)
Sylvia M. DICKENS, Girlie Sims Warren and Gennie L. Warren
v.
COMMERCIAL UNION INSURANCE COMPANY, Ordia Byrd Johnson, City of Baton Rouge, Parish of East Baton Rouge, Through East Baton Rouge Housing Authority and Willie Collins.
Willie Collins, Melvin Dixon, Elice Parker, Sr., and Patsy Pittman
v.
Ordia Byrd Johnson, East Baton Rouge Parish Housing Authority, and Commercial Union Insurance Company.
Nos. 99/CA/0698, 99/CA/0699.
Court of Appeal of Louisiana, First Circuit.
June 23, 2000.
*1195 Alan L. Schwartzberg, Baton Rouge, Counsel for Plaintiffs/Appellees, Willie Collins, Melvin Dixon, Elice Parker, Sr. and Patsy Pittman.
Donald R. Smith, Danny Atkinson, Jr., Baton Rouge, Counsel for Plaintiffs/Appellees, Sylvia M. Dickens, Girlie Sims Warren and Gennie L. Warren.
Paul H.F. Baker, Lafayette, Counsel for Defendants/Appellants, American Central Insurance Company, Ordia Byrd Johnson and East Baton Rouge Housing Authority.
Nan M. Landry, Lafayette, Counsel for Defendants/Appellants, East Baton Rouge Parish Housing Authority and Commercial Union Insurance Company.
Before: YELVERTON, THIBODEAUX and GREMILLION, JJ.[*]
THIBODEAUX, Judge.
This case involves two consolidated suits for damages arising from a 1995 vehicular collision. American Central Insurance Company[1] (hereinafter "American Central") appeals the trial court's rulings pertaining to a party's failure to appear at trial and to review the allocation of fault and award of damages. We find that the trial court properly denied American Central's motion to dismiss based on the party's absence but erred in permitting the introduction of her deposition testimony under these facts. We amend that party's damages to exclude those only evidenced in the inadmissible deposition. We affirm the allocation of fault and affirm the other damage awards. We also deny American Central's claim for subrogation.

I.

FACTS
The accident spawning this litigation occurred at the intersection of Plank Road and Sumrall Avenue in Baton Rouge, Louisiana on October 27, 1995. A van driven by Ms. Ordia Johnson, owned by the East Baton Rouge Housing Authority and insured by American Central, was proceeding in a northerly direction on Plank Road approaching the intersection with Sumrall Avenue. Ms. Johnson was driving the van in the course of her employment. Also in the van were Ms. Sylvia Dickens, Mrs. Girlie Sims Warren and the Rev. Gennie L. Warren. Mr. Willie Collins was approaching the intersection from the East on Sumrall Avenue in a car owned by Ms. Patsy Pittman. The passengers in his car were Mr. Melvin Dixon and Mr. Elice Parker. A third vehicle driven by Ms. Marjorie White was following Mr. Collins. Mrs. Marjorie Kerry was a passenger in that vehicle.
*1196 The driver and passengers in the van testified that they were engaged in conversation as they approached the intersection. Ms. Johnson testified that she had the green light when she reached the intersection. She stated that she saw the car driven by Mr. Collins approaching, deduced that it was not going to stop at the intersection, but was unable to avoid the collision. The passengers in her vehicle testified, generally, that the light was green as they approached the intersection, but that they were not paying close attention to the light as they proceeded through the intersection.
Mr. Collins was attempting to make a left turn from Sumrall Avenue onto Plank Road. He and his passenger testified that the light was green as they proceeded through the intersection. With minor variations, Ms. White and Mrs. Kerry confirmed this.
There were several contradictions in the witnesses' accounts of the events. The trial judge determined that Ms. Johnson negligently proceeded through the intersection on a red light and attributed one hundred percent of the fault to her. He concluded that the drivers and passengers had sustained injuries in the accident and awarded damages.
Ms. Dickens did not attend the trial. Over the defendants' objections, the court permitted the introduction of her deposition testimony in lieu of her live testimony. The trial judge awarded damages to her based, in part, on her deposition.
American Central brought this appeal.

II.

LAW AND DISCUSSION

Failure of Party to Appear
American Central argues that the trial court erred in denying its motion to dismiss Ms. Dickens' claim due to her failure to appear at trial. In support of this argument, American Central cites La.Code Civ.P. art. 1672(A)(1) and Jackson v. Royal Ins. Co., 97-723 (La.App. 3 Cir. 12/17/97); 704 So.2d 424 to substantiate their claim that the trial court was required to dismiss the action upon their motion because Ms. Dickens failed to appear at trial.
Addressing involuntary dismissal upon a party's failure to appear, La.Code Civ.P. art. 1672(A)(1) states: "A judgment dismissing an action shall be rendered upon application of any party, when the plaintiff fails to appear on the day set for trial." In Jackson, 704 So.2d 424, the Third Circuit upheld the trial court's dismissal of an action where both the plaintiff and her attorney failed to appear at trial.
We agree that the trial court has discretion to dismiss an action upon the application of any party when the plaintiff fails to appear. However, an appearance may be made either personally or through an attorney. La.Code Civ.P. art. 1672 cmt. (g); Cf. La.Code Civ.P. art. 6; Spencer v. Children's Hosp., 432 So.2d 823 (La.1983). Although Ms. Dickens was not present at trial, she was represented by her attorney. Because her attorney made an appearance at trial, Jackson is inapplicable here.
Generally, a trial court is not required to dismiss proceedings due to the absence of a party. A party who makes an appearance through his counsel is not "absent" under Article 1672. The plaintiff's physical presence in court is not essential in all cases. Spencer, 432 So.2d 823.
An appellate court reviews a trial court's decision regarding dismissal pursuant to a manifest error or clearly wrong standard. Crowell v. Alexandria, 558 So.2d 216 (La.1990); Liberto v. Rapides Parish Police Jury, 95-456 (La.App. 3 Cir. 11/2/95); 667 So.2d 552. After conducting such a review, we find no error in the trial court's refusal to grant the motion for dismissal.

Use of Deposition Testimony
In its next assignment of error, American Central asserts that it was error for *1197 the trial court to permit the introduction of Ms. Dickens' deposition testimony in evidence because she was not "unavailable" under La.Code Civ.P. art. 1450. Ms. Dickens counters that the trial court has great discretion in determining the use of deposition testimony at trial when the witness is out of state or exceptional circumstances make admissibility of the deposition desirable.
Article 1450 establishes the parameters for the use of deposition testimony at trial:
A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
. . . .
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
(a) That the witness is unavailable; [or]
(b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition[.]
Thus, the requirements for the admissibility of the deposition of a witness are twofold: (1) the deposition must be admissible under the Louisiana Code of Evidence and (2) the witness must be either (a) unavailable; (b) residing over one hundred miles from the place of trial; or (c) in another state without provocation by the party offering the deposition. The issue presented is whether the trial court properly found that Ms. Dickens was unavailable to testify at trial or that her absence from the state was not self-procured.
Ms. Dickens explains that she was not present at trial because she was attending a national conference of the National Association of Community Action Agencies of which she is a member of the Board of Directors of the Baton Rouge Chapter. Her counsel explained her activities to the trial judge who found that Ms. Dickens was unavailable and permitted Ms. Dickens' deposition to be admitted in evidence over Defendants' objections.
A party is not legally "unavailable" as a witness simply because he eschews the trial. Hoy v. Gilbert, 98-1565 (La.3/2/99); 754 So.2d 207. Additionally, a party whose absence from trial is attributable to his choice to be out of state on the date of trial is considered to have procured his own absence. Bruins v. United States Fleet Leasing, Inc., 430 So.2d 386 (La.App. 3 Cir.1983); Wehbe v. Waguespack, 98-475 (La.App. 5 Cir. 10/28/98); 720 So.2d 1267, writs denied, 98-2907 (La.1/15/99); 736 So.2d 211 and 98-2970 (La.1/15/99); 736 So.2d 213. A party who is not legally unavailable or who is intentionally absent from trial due to his choice to be out of state may not submit his deposition testimony in lieu of live testimony.
"The trial court has much discretion in determining whether to allow the use of deposition testimony at trial, and its decision will not be disturbed upon review in the absence of an abuse of that discretion." State in the Interest of Bordelon v. Guichard, 94-1795, p. 10 (La.App. 1 Cir. 5/5/95); 655 So.2d 1371, 1378, writ denied, 95-1405 (La.9/15/95); 660 So.2d 454. Our review of the record clearly shows that Ms. Dickens was absent because she chose to attend a conference in Florida rather than attend the trial of her claim. She was legally available and her absence was self-procured. Accordingly, she was not entitled to introduce her deposition testimony under Article 1450. The trial court *1198 abused its discretion in permitting the introduction of her deposition testimony.
Our conclusion that the introduction of Ms. Dickens' deposition testimony was improper necessitates a review of the trial court's assessment of her damages. She is entitled to recover for only those damages which are evidenced elsewhere in the record, exclusive of those presented solely in her deposition. Hoy, 98-1565, 754 So.2d 207; Harvey v. Travelers Ins. Cos., 487 So.2d 106 (La.App. 4 Cir.1986).
The trial judge awarded Ms. Dickens $22,131 in damages: $7,131 for medical expenses and $15,000 for past, present and future pain and suffering. Our review of the record supports the award for medical expenses; however, we find only minimal support for an award for pain and suffering. The record shows that Ms. Dickens had a pre-existing back injury and that she suffered only soft tissue injuries which slightly and temporarily intensified her pain. Accordingly, we reduce damages for pain and suffering to $3,000, making her total damages award $10,131.

Allocation of Fault
In its next assignment of error, American Central urges this Court to reverse the trial court's allocation of one hundred percent of the fault to Ordia Byrd Johnson. They focus our attention on contradictory testimony given by the drivers and passengers of the various vehicles involved in the accident.
The trier of fact apportions fault after considering both the nature of each party's conduct and the correlation between that conduct and the damages claimed. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985); Gibson v. State, Through Dep't of Transp. and Dev., 95-1418 (La.App. 1 Cir. 4/4/96); 674 So.2d 996, writs denied, 96-1862 (La.10/25/96); 681 So.2d 373, 96-1895 (La.10/25/96); 681 So.2d 373 and 96-1902 (La.10/25/96); 681 So.2d 374. "The allocation of a particular percentage of fault to a party is a finding of fact." Babin v. Burnside Terminal, Greater Baton Rouge Port Comm'n, 577 So.2d 90, 99 (La.App. 1 Cir. 1990). On review, an appellate court will not reverse a trial court's finding of fact unless it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Both drivers had a duty to exercise care upon approaching the intersection. "A left turn is one of the most dangerous maneuvers a motorist may execute and requires the exercise of great caution. Before attempting a left turn, a motorist should ascertain whether it can be completed safely." Pesson v. Reynolds, 97-150, p. 9 (La.App. 1 Cir. 11/13/98); 727 So.2d 507, 512, writ denied, 99-875 (La.5/7/99); 741 So.2d 657 (citations omitted). All motorists have a duty to maintain a careful lookout, observe obstructions, and exercise care to avoid them. Id.
The drivers, passengers and witnesses gave contradictory testimony as to who had the green light at the intersection. The trial judge weighed the evidence and determined that Mr. Collins had the green light at the intersection, that Ms. Johnson was distracted when approaching the intersection and that Ms. Johnson had negligently proceeded through the intersection thereby causing the accident. Pursuant to this finding, he allocated one hundred percent of the fault to Ms. Johnson.
As the reviewing court, our charge is not to determine whether the factfinder was right or wrong, but whether his conclusion was a reasonable one. Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Id.
The trial judge, after listening to the testimony, reviewing the evidence and observing the witnesses' demeanor, made credibility determinations as to which facts were most accurate. He found that the cause of the accident was "the inattentiveness *1199 of Ms. Johnson in proceeding through the intersection on a red light." Upon careful review of the record, we cannot say that the trial judge was manifestly erroneous in finding that Ms. Johnson was one hundred percent at fault in causing the accident. We will not disturb this conclusion.

Damages
American Central argues that Ms. Dickens, Mrs. Warren and Rev. Warren sustained only soft tissue injuries and that their damage awards are excessive. It is unclear whether American Central is arguing that the monetary awards are excessive for their injuries or that the alleged injuries were unsubstantiated by the evidence or unrelated to the accident. Having already reviewed Ms. Dickens' award, we now consider the Warrens' awards.
Regarding causation, the plaintiffs must prove through medical testimony, by a preponderance of the evidence, that it is more probable than not that their subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95); 650 So.2d 757. The record shows that the plaintiffs met this burden and the defendants have not rebutted it.
The trial judge has much discretion in the assessment of damages. La.Civ.Code art. 2324.1. The record reveals no abuse of that discretion. Thus, we decline to disturb the damage awards of $102,048 to Mrs. Warren and $11,875 to Rev. Warren.

Subrogation
Lastly, American Central contends that the trial court erroneously denied its claim for a credit against its liability coverage for the $30,000 it paid Ms. Dickens and the Warrens under its uninsured motorist coverage. Without articulating the basis for this claim, American Central contends that it is entitled to and did not waive its rights to an offset, credit, subrogation and/or reimbursement.
It is clear from the amalgamation of legal arguments that American Central has an imprecise understanding of the rights to which they may be entitled. In order for us to evaluate their rights, we must first distinguish among the various claims in order to ascertain what right, if any, applies here.
Subrogation is the legal or conventional substitution of one person to the rights of another. La.Civ.Code art. 1825. Subrogation occurs by operation of law in favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment. La.Civ.Code art. 1829(3). When subrogation takes place by operation of law, the new obligee may recover from the obligor only to the extent of the performance rendered to the original obligee and may not increase his recovery by invoking conventional subrogation. La.Civ.Code art. 1830. An insurer's right to recover from a negligent third party for the debt it paid to its insured arises under Article 1829(3), even where there is no contractual subrogation clause in the insurance contract. State Farm Mut. Auto. Ins. Co. v. Berthelot, 98-1011 (La.4/13/99); 732 So.2d 1230. "Consequently, an insurer bound to repair the damage caused by a tortfeasor is solidarily liable with the tortfeasor because both are obligated to the same thing, repair of the tort damage." A. Copeland Enters., Inc. v. Slidell Memorial Hosp., 94-2011, p. 7 (La.6/30/95); 657 So.2d 1292, 1297.
Subrogation is distinct from reimbursement. "With subrogation, the insurer stands in the shoes of the insured, whereas with reimbursement, the insurer has a direct right of repayment against the insured." A. Copeland Enters., 94-2011 at p. 10, 657 So.2d at 1298-1299. A true reimbursement does not permit the insurer to proceed against the tortfeasor. Barreca v. Cobb, 95-1651 (La.2/28/96); 668 So.2d 1129.
An uninsured motorist carrier may recover payments it made to its insured *1200 pursuant to La.R.S. 22:1406(D)(4) which provides:
In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.
(Emphasis added.) Under this section, upon tendering payment under its uninsured motorist policy, an insurer acquires the rights its insureds had against the tortfeasor. The insurer is not entitled to subrogation when its insured had no rights to transfer. Cf. Bosch v. Cummings, 520 So.2d 721 (La.1988); State Farm Mut. Auto. Ins. Co. v. Nathan, 95-2001 (La. App. 1 Cir. 5/10/96); 673 So.2d 710. "An accepted, unconditional tender of funds an insurer reasonably believes it owes is not refundable, absent some fraud or ill practices." State Farm Mut. Auto. Ins. Co. v. Azhar, 620 So.2d 1158, 1160 (La.1993); Kimble v. Reason, 626 So.2d 6, 11 (La.App. 1 Cir.1993).
The record reflects that American Central made a payment to Ms. Dickens and the Warrens under its uninsured motorist provisions and then filed a cross-claim against Mr. Collins to recover that amount. This is a claim for subrogation based on the assumption that `Mr. Collins was at least partially at fault in causing the accident. However, since the trial court found that Mr. Collins was not at fault in causing the accident, he is not solidarily liable with American Central for the damages. Whereas subrogation permits an insurer to recover from the party who caused damage, American Central is not permitted recovery from Mr. Collins because no fault was apportioned to him. We must deny American Central's claim for subrogation or reimbursement.

III.

CONCLUSION
For the foregoing reasons, we affirm those portions of the trial court judgment addressing the denial of the defendant's motion to dismiss for Ms. Dickens' failure to appear at trial, the allocation of fault and the assessment of damages. We also affirm the denial of American Central's claim for subrogation. We reverse the trial court's use of Ms. Dickens' deposition testimony in lieu of her live testimony and adjust her award of general damages to $3,000 to reflect the damages supported by the appropriate evidence. American Central is cast with costs of this appeal.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[*] Judges Pro Tempore by special appointment of the Louisiana Supreme Court.
[1] American Central was erroneously referred to as Commercial Union Insurance Company in the original pleadings.