STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-870


QUINCY L. CAWTHORNE

VERSUS

JACE FOGLEMAN, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20102387
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS
JUDGE**

**********

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.


**JUDGMENT OF DISMISSAL VACATED.
REMANDED WITH INSTRUCTIONS.**


**Conery, J., concurs with reasons.**


**Edward O. Taulbee, IV**
**Taulbee & Associates**
**P. O. Box 2038**
**Lafayette, LA 70502-2038**
**(337) 269-5005**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Southern Farm Bureau Cas. Ins. Co.**
    **Michael Fogleman**
    **Jace Fogleman**

**Pride Justin Doran**
**Doran Law Firm**
**P. O. Box 2119**
**Opelousas, LA 70571**
**(337) 948-8008**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
     **Quincy L. Cawthorne**

**SAUNDERS, J.**

This case arises out of an automobile accident in Lafayette, Louisiana. Plaintiff brought suit alleging injury arising out of said automobile accident. A jury found no negligence on the part of Defendant and the trial court thereby dismissed the suit. Plaintiff appeals.

**FACTS AND PROCEDURAL HISTORY**

On April 8, 2009, at approximately 3:58 p.m., Plaintiff, Quincy Cawthorne ("Cawthorne"), was travelling westbound on Johnston Street in Lafayette, Louisiana, in his 2007 GMC Yukon. At about that same point in time, Defendant, Jace Fogleman ("Fogleman"), was leaving his condominium at 2202 Johnston Street in his 2006 Chevrolet Malibu. Fogleman exited the private driveway of his complex, turning right into the outside westbound lane onto Johnston Street. When he did so, or shortly thereafter, the two cars collided.

Officer Chadwick Fontenot ("Office Fontenot") of the Lafayette Police Department arrived on the scene shortly after to investigate the accident. He took two written statements from the parties. Cawthorne provided the following statement of events:

> I was traveling west on Johnston Street when a car pulled out of a private drive onto Johnston Street. I attempted to avoid him but could not, because a car was beside me in the inside line [sic]. I was in the outside lane at the time of the accident. The driver stated that he did not see me.

Fogleman also provided the investigating officer with a written statement of the events:

> I was turning out of 2202 Johnston and was turning right with my blinker on. It was safe to get into the right lane. There were no blinkers indicating that a vehicle needed to switch lanes. I pulled out of my drive and began to drive when I was hit by the Yukon.

Fogleman additionally gave a verbal statement, which the officer summarized as indicating that Fogleman "exited a private lot, making a right turn onto Johnston Street. He stated it was clear for him to proceed. He stated that he was making a right turn when his vehicle collided with" Cawthorne's vehicle.

Fogleman testified that this accident occurred because Cawthorne changed lanes, moving from the inside westbound lane and crossing the center line into Fogleman's lane of travel, without signaling and with no advance warning thereby striking Fogleman's vehicle. Fogleman contended he completed his right turn into the outside lane and was fully occupying that lane.

In his accident report, Officer Fontenot established that the weather was clear and dry. There were no impediments to Fogleman's field of vision from where he was turning. The speed limit was forty miles per hour, and there was no evidence of Cawthorne violating the speed limit.

Cawthorne filed suit on April 7, 2010, against Fogleman, Fogleman's father, and their insurance company, asserting he suffered bodily injury, including, but not limited to, neck and back pain.[1] Fogleman's father was later dismissed. Cawthorne asserted at trial that, as a result of the accident, he sustained approximately $143,563.62 in past medical expenses. His treating physician, Dr. George Ray Williams ("Dr. Williams"), performed a lumbar fusion and also recommended a cervical fusion. Cawthorne also asserted that it was reasonable to expect he would incur at least $147,255.00 in future medical expenses as a result of the accident.

Fogleman asserted that he did not cause the accident, but rather it was due to Cawthorne's fault. He offered accident reconstruction testimony by James Lock ("Lock"), as well as testimony by a diagnostic radiologist, Dr. Curtis Partington

---

[1] Fogleman's father was later released from this suit.

("Dr. Partington"). The parties filed several motions in limine pertaining to the contested issues of whether Fogleman's deposition would be allowed in lieu of his actual appearance at trial, whether Lock would be allowed to testify, and whether (and to what extent) Partington would be allowed to testify.

The trial court denied Cawthorne's motions in limine pertaining to the above pre-trial motions on February 22, 2012, and further denied his motion for reconsideration on the first morning of the trial. Trial began on February 27, 2012, and lasted for four days. The jury returned with a verdict in favor of Fogleman, finding he was not negligent. Cawthorne appeals.

## ASSIGNMENTS OF ERROR

Cawthorne sets forth the following assignments of error:

1. The jury erred in finding Fogleman bore no legal responsibility for the automobile accident.

2. The trial judge erred in allowing the introduction of Fogleman's trial deposition, instead of requiring that he appear at trial.

3. The trial judge erred in allowing the testimony of James Lock.

4. The trial judge erred in not allowing Cawthorne to present a diagram of the accident scene prepared by Officer Fontenot.

5. The trial judge erred in allowing the testimony of Dr. Partington.

6. The jury erred by not making an award of damages.

## LAW AND ANALYSIS

**Standard of Review**

An appellate court must do more than simply review the record for some evidence which supports or controverts a trial court's finding; the appellate court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Johnson v. Safeway Ins. Co*., 98-920

(La.App. 3 Cir. 1/6/99), 741 So.2d 32. An appellate court, even if it believes that errors committed at trial influenced the jury verdict, must undertake an independent evaluation of the facts and adjudicate the controversy before it. *Temple v. Liberty Mut. Ins. Co.*, 330 So.2d 891 (La.1976).

Where there is conflict in testimony as to which party's negligence was the cause of the accident, a fact finder's reasonable evaluations of credibility and inferences of fact should not be disturbed unless they are clearly wrong or manifestly erroneous. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. *Cosse v. Allen-Bradley Co.*, 601 So.2d 1349 (La.1992).

Therefore, to reverse a trial court's determination of fact, 1) no reasonable factual basis must exist for the fact finder's conclusions, and 2) the record must establish the fact finder is clearly wrong or manifestly erroneous. *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La. 4/3/02), 816 So.2d 270.

**Assignment of Error No. 1: Jury Finding**

The first issue raised on appeal by Cawthorne is the jury's determination that Fogleman bore no legal responsibility for the accident. Our review of the record and facts recited show the evidence can be interpreted in two possible ways—one which would relieve Fogleman of liability and one which would hold him accountable. As discussed above, the manifest error rule states that an appellate court must give great deference to the fact finder's reasonable conclusions. When there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Davis v. Ensco Offshore Co.*, 06-197 (La.App. 3 Cir. 5/31/06), 931 So.2d 1194. In this case, there are two

4

reasonable interpretations of the facts. Accordingly, we cannot reverse the jury's finding of no legal responsibility on the part of Fogleman.

**Assignment of Error No. 2: Fogleman's Trial Deposition**

Fogleman was not present at trial because he voluntarily enrolled in a transitional program in Spokane, Washington, following his completion of a drug therapy program. He began seeking therapy in October of 2011 in Utah at a facility called "Legacy Outdoor Adventures" and completed the program in three months. He then voluntarily enrolled in the Washington program, "Life Designs," which he alleged was for a minimum of five months. This, he asserts, made him unavailable to testify at trial in February of 2012, and necessitated the use of his trial deposition.

Louisiana Code of Civil Procedure Article 1450, in pertinent part, establishes the parameters for the use of deposition testimony at trial for a party or witness:

> A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
>
> . . . .
>
> (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
>
> (a) That the witness is unavailable; [or]
>
> (b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition. . . .

La.Code Civ.P. art. 1450(A)(3). Thus, the requirements for the admissibility of the deposition of a witness are twofold: (1) the deposition must be admissible under

the Louisiana Code of Evidence and (2) the witness must be either (a) unavailable; (b) residing over one hundred miles from the place of trial without provocation by the party offering the deposition; or (c) in another state without provocation by the party offering the deposition.

When the deposition is sought to be used in place of the witness' actual trial testimony, a showing of unavailability of the witness is required. *Montgomery v. Breaux*, 297 So.2d 185 (La.1974). A party who is not legally unavailable or who is intentionally absent from trial due to his choice to be out of state may not submit his deposition testimony in lieu of live testimony. *Boutte v. ABC Ins. Cos.*, 00-0649 (La.App. 4 Cir. 2/6/02), 811 So.2d 30. A party whose absence from trial is attributable to his choice to be out of state on the date of trial is considered to have procured his own absence. *Bruins v. U.S. Fleet Leasing, Inc.*, 430 So.2d 386 (La.App. 3 Cir. 1983).

In *Bruins*, the defendant and his wife attempted to offer their depositions in lieu of appearing at trial but the trial court refused to admit the depositions finding that they "decided" to be out of Louisiana on the day of trial. *Id.* at 387. Defendant "was the party offering the depositions and was also the party 'procuring' the absence of the witnesses." *Id.* As such, this violated La.Code Civ.P. art. 1450; defendant was not legally unavailable and was intentionally absent from trial due to his choice to be out of state; therefore, he could not submit his deposition testimony in lieu of live testimony when he procured that unavailability. La.Code Civ.P. art. 1450.

Life Designs is not a medical treatment facility as alleged by Fogleman in his trial deposition, but a therapeutic program for young adults that "offers fantastic opportunities for outdoor recreation." The program was voluntary and served no medical purpose. At trial, his mother, Rebecca Fogleman, testified that it was

"fair" to say her son was not receiving any medical treatment at Life Designs. She also denied that there was a doctor providing him with any type of medical treatment there.

No evidence was offered that Fogleman was unable to leave the center except for his own testimony. Fogleman admitted that he had never discussed with anyone at the program whether he could leave. In his trial deposition, Fogleman stated he never even inquired as to whether he could return to Louisiana to testify at trial and then return to the program. He stated an exception was allowed for him to give the deposition because it was "very important" to him, but he was unaware of the criteria for making an exception that would allow him to leave the facility or take a hiatus. He asserted the facility did not allow him to come and go freely or as he pleased.

Having permission to come and go freely is very different from the availability of permission to leave under extraordinary circumstances, such as being a defendant at trial. In the instant case, our review of the record shows Fogleman did not show he was legally unavailable. There is no credible proof that Fogleman could not make it to trial. The only evidence as to why Fogleman was unavailable was his own self-serving, and false, deposition statement that he was receiving some sort of medical treatment. In *Bourgeois v. A.P. Green Indus., Inc.*, 06-87 (La.App. 5 Cir. 7/28/06), 939 So.2d 478, *writ denied*, 06-2159 (La. 12/8/06), 943 So.2d 1095, the appeals court found the unavailability of a named plaintiff was not established since the only evidence as to his lack of availability came from hearsay evidence from the plaintiff's attorney, which could not be considered. Likewise, Fogleman's self-serving statements on his ability to leave Life Designs, without more, are an insufficient showing of unavailability. "A party is not legally 'unavailable' as a witness simply because he eschews the trial." *Dickens v.*

7

*Commercial Union Ins. Co.*, 99-698, 99-699, p. 5 (La.App. 1 Cir. 6/23/00), 762 So.2d 1193, 1197.

In *Dickens,* the court of appeal's review of the record showed that the plaintiff Dickens was absent because she chose to attend a conference in Florida rather than attend the trial of her claim. Dickens argued she was attending a national conference of which she was a member of the Board of Directors of the Baton Rouge Chapter. Nevertheless, the court held she was legally available and her absence was self-procured. Accordingly, she was not entitled to introduce her deposition testimony under Article 1450, and the trial court abused its discretion in permitting the introduction of her deposition testimony. *Dickens*, 762 So.2d 1193.

The instant case is also similar to *Wehbe v. Waguespack,* 98-475 (La.App. 5 Cir. 10/28/98), 720 So.2d 1267, *writs denied*, 98-2907 (La. 1/15/99), 736 So.2d 211 and 98-2970 (La. 1/15/99), 736 So.2d 213, where the appeals court upheld a trial court's finding that one of the plaintiffs, who was out of the country, chose to remain there and was available for trial. In that case, the husband was injured in an auto accident and filed suit to recover; his wife asserted a claim for loss of consortium. She did not appear at trial and the trial court excluded her deposition from evidence. The court noted that the record contained nothing to indicate the plaintiff's failure to attend trial was attributable to any reason other than her choice to remain in Lebanon. *Id*.

The trial court abused its discretion in permitting the use of Fogleman's deposition. His live appearance was crucial for the jury to weigh the credibility of his testimony rather than glean what happened the day of the accident from the cold record of his deposition. Where there is such a crucial conflict in testimony, the jury's core means of making reasonable evaluations of credibility and reasonable inferences of fact comes from witnessing live testimony. The use of a

8

deposition in lieu of a key party testifying should not be taken lightly. There is no supportable evidence in the record that Fogleman could not leave the program to testify at trial; it only reflects evidence that he chose to remain there. Choosing to stay at Life Designs in Washington was more for his convenience than out of necessity. As such, it was self-procured. He was, therefore, legally available. Thus, we find that he was not entitled to introduce his deposition testimony in lieu of live testimony. Remand for a trial not inconsistent with this evidentiary holding is necessary in light of this finding.

**Assignment of Error No. 3: James Lock Testimony**

A trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and this includes the determination of how much and what kind of education and/or training adequately qualifies the individual as an expert, and such judgment will not be disturbed by an appellate court unless it is clearly erroneous. *Rhine v. Bayou Pipe Coating*, 11-724 (La.App. 3 Cir. 11/2/11), 79 So.3d 430.

Louisiana Code of Evidence Article 702 sets forth the general rule for the admissibility of expert testimony in Louisiana:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

For the expert's testimony to qualify as knowledge which would assist the trier of fact, it must meet four criteria originally established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), and adopted by Louisiana courts. This inquiry serves to assist the trial judge in making a preliminary assessment as to the validity of the evidence because the trial judge is required to act as a gatekeeper in order to ensure "any and all scientific testimony

9

or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. These criteria include:

1. The "testability" of the expert's theory or technique;

2. Whether the theory or technique has been subjected to peer review and publication;

3. The known or potential error rate; and

4. Whether the methodology is generally accepted in the scientific community.

*Perret v. Nelson*, 98-393, p. 11 (La.App. 5 Cir. 11/25/98), 722 So.2d 1118, 1123, *writ denied*, 98-3166 (La. 2/12/99), 738 So.2d 575 (citations omitted).

Cawthorne asserts the trial court abused its discretion in accepting James Lock as an expert in the field of accident reconstruction and allowing him to present his expert opinions. Cawthorne argues Lock was unqualified, his opinions were based on nothing more than common sense, and Lock arbitrarily decided to believe or disbelieve one witness over the other.

Lock has thirty-seven years of experience in the field of accident reconstruction. He began his training in 1975 working for the Department of Transportation Institute at Texas A&M performing contract work for the United States Department of Transportation. During this six-year period, he performed thousands of accident investigation reconstructions. He also developed training courses in accident investigation reconstruction and trained others in the field. He has been accepted as an accident reconstruction expert by courts in Texas, Louisiana, Mississippi, Alabama, Georgia, Florida, South Carolina, Indiana, Missouri, Tennessee, New York, Ohio, Michigan, South Dakota, California, Arizona, New Mexico, and Colorado. He has also performed work for various

10

Departments of Transportation including Louisiana, Texas, Missouri, Georgia, Florida, New Mexico, and Pennsylvania.

In conducting his accident reconstruction evaluation in the instant case, Lock employed peer-reviewed methodologies recognized and accepted in his field, including those outlined in the Northwestern Traffic Institute Manual. This methodology is generally accepted in the scientific community.

It was within the trial court's discretion to rule that Lock was qualified to render expert testimony in his field of accident reconstruction. This was not clearly erroneous. The trial court did not abuse its discretion in accepting Lock as an expert. We do not find merit in this assignment of error.

**Assignment of Error No. 4: Officer Fontenot Diagram**

Cawthorne alleges the trial court abused its discretion in granting Fogleman's Motion in Limine excluding Officer Chadwick Fontenot's diagram from evidence at trial. The trial court is vested with wide discretion in determining the relevancy of evidence, and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. *State v. Miles*, 402 So.2d 644 (La.1981).

Officer Fontenot investigated the accident as an officer for the Lafayette Police Department. He did not witness the accident. Officer Fontenot further confirmed that the vehicles were moved prior to his arrival; there were no markings on the roadway related to the accident; there was no debris on or around the roadway related to the accident; and he did not perform any measurements during his investigation of the accident.

Officer Fontenot was never qualified, tendered, or accepted as an expert in this case. As part of the crash report made at the scene of the accident, Officer Fontenot prepared an unscaled diagram in which he marked an approximate area of impact. This diagram was not based on any measurements regarding distances

11

and/or spacing of the relevant points, nor was it based on his observation of any physical evidence at the scene of the accident. In essence, Officer Fontenot arbitrarily identified and labeled points on the diagram.

Based on this context, the trial court excluded Officer Fontenot's diagram on the basis that it had no probative value and was prejudicial. This exclusion is not clearly erroneous. The trial court did not abuse its discretion in excluding Officer Fontenot's diagram. We do not find merit in this assignment of error.

**Assignment of Error No. 5: Dr. Partington Testimony**

Cawthorne asserts the trial court abused its discretion in accepting Dr. Curtis Partington, a neuroradiologist and licensed medical doctor, as an expert in this case.

One of the issues presented to the trier of fact was the interpretation of Cawthorne's cervical MRI, performed on May 19, 2009, by Dr. David Jewell, regarding a possible abnormality at C4-5 and C5-6. Dr. Jewell performed the MRI upon the referral of Cawthorne's treating orthopedic surgeon, Dr. George Williams. Dr. Jewell concluded the cervical MRI was normal at C4-5 and C5-6. Dr. Williams also interpreted the MRI and concluded there were abnormalities at C4-5 and C5-6 and these abnormalities warranted surgical intervention. Thereafter, Fogleman asked Dr. Curtis Partington to review the MRI and formulate a third opinion. Dr. Partington was not asked to physically examine Cawthorne, as is the standard in neuroradiology, only to review the cervical MRI for the existence of abnormalities.

Dr. Partington has been practicing radiology in Baton Rouge, Louisiana, for twenty-one years and has been certified in the subspecialty of neuroradiology since the Board of Neuroradiology was created about sixteen years ago. Neuroradiology, a subdiscipline of radiology, deals with diagnostic imaging of the

brain and spinal cord. Cawthorne stipulated to the qualification of Dr. Partington in Dr. Partington's trial deposition.

On appeal, Cawthorne focuses on the fact that Dr. Partington did not physically examine Cawthorne or review Cawthorne's documentation as to specific pain complaints, and that Dr. Partington was rejected as an expert previously for not physically examining a patient. It is clear that this methodology is generally accepted in the field of neuroradiology, as no physical examination is required to interpret an MRI. Thus, we find that the trial court did not abuse its discretion in accepting Dr. Partington as an expert witness in his field of neuroradiology. We do not find merit in this assignment of error.

**CONCLUSION**

We have noted in the assignment of error number two that the use of Fogleman's trial deposition in lieu of his live testimony was in error. When appropriate, appellate courts render judgments on the merits when the trial court has made a consequential but erroneous ruling on the exclusion or admission of evidence. *Builliard v. New Orleans Terminal Co.*, 171 So. 78 (1936). *See also Gonzales v. Xerox*, 320 So.2d 163 (La.1975) and cases cited therein.

Therefore, "[w]here a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record." *Ragas v. Argonaut Sw. Ins. Co.*, 388 So.2d 707, 708 (La.1980). However, "[t]here are cases where the weight of the evidence is so nearly equal a firsthand view of witnesses is essential to a fair resolution of the issues." *Id.* "The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from

the cold record.  Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial." *Id*.

In applying this standard, it is clear that the instant case is one in which it would be inappropriate for adjudication by an appellate court.  As such, remand for a trial not inconsistent with this evidentiary holding is appropriate in light of our findings.  We reverse the trial court's decision to allow Fogleman to submit a deposition in lieu of his live testimony.

**DECREE**

Fogleman was not unavailable as required for use of a deposition by La.Code Civ.P. art. 1450, given that he made an insufficient showing of unavailability.  The trial court abused its discretion in finding otherwise.  Thus, he should not have been permitted to use a trial deposition in lieu of his live testimony.  Given that the weight of evidence is so nearly equal that firsthand view of witnesses is essential to a fair resolution of the issues, the case is not appropriate for appellate adjudication.  We reverse the trial court's decision to allow Fogleman to submit his deposition in lieu of his live testimony and remand the matter to the trial court for results not inconsistent herewith.

Costs of this appeal are assessed to Fogleman.

**JUDGMENT OF DISMISSAL VACATED.**
**REMANDED WITH INSTRUCTIONS.**

QUINCY  L. CAWTHORNE

VERSUS

JACE  FOGLEMAN, *et al*

**CONERY, J. concurs and assigns reasons.**

I concur with the majority on the record as it is presently constituted.  For the reasons set forth in the opinion, I agree that the defendant has not met his burden of proving a legally acceptable reason for his client's absence at trial and therefore the defendant's deposition should not have been admitted.  The issue of credibility is crucial in this case and it is necessary, absent exceptional circumstances, that the defendant be present for in person testimony and for the defendant's cross examination in the presence of the jury.  A key issue in the case was the location of plaintiff's vehicle when defendant pulled out of the parking lot onto Johnston Street.  The plaintiff had the right to cross examine the defendant on this and other key issues in the presence of the jury so that the jury could properly perform its duty to weigh witness credibility and find the facts.  Voluntary absence on the part of the defendant, especially in a jury case, should not be excused absent special and exceptional circumstances not proven by the defendant on the record of this case.